# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CINDY OWENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-3614 |
| | § | |
| EQUIFAX INFORMATION | § | With Jury Demand Endorsed |
| SERVICES, LLC, EXPERIAN | § | |
| INFORMATION SOLUTIONS, INC., | § | |
| INNOVIS DATA SOLUTIONS, INC., | | |
| TRANS UNION, LLC, and | § | |
| NATIONSTAR MORTGAGE, LLC, | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Cindy Owens ("Plaintiff"), by and through counsel, for her Complaint against Defendants, Equifax Information Services, LLC**,** Experian Information Solutions, Inc.  Innovis Data Solutions, Inc., Trans Union, LLC, and Nationstar Mortgage, LLC, jointly, severally, and in solido, states as follows:

### I.   INTRODUCTION

1.       Four of the Defendants are, consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and one Defendant, Nationstar Mortgage, LLC, is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and

punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiff, Cindy Owens, is a natural person residing in Davidson County, North Carolina. She is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c) and a victim of repeated false credit reporting.

Made Defendants herein are:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning

consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.      Upon information and belief, Innovis Data Solutions, Inc., which may also hereinafter be referred to as "Innovis", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 250 E. Town Street, Columbus, Ohio 43215. Innovis is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Innovis regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Innovis disburses such consumer reports to third parties of contract for monetary compensation.

7.      Upon information and belief, Defendant Nationstar Mortgage, LLC or Mr. Cooper,

which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, Innovis, and TransUnion.

### III. JURISDICTION AND VENUE

9.      Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

10.      Venue is proper in this District, because CRA Defendants and Nationstar transact

business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

11.     Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiffs' mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

12.     In November 2014, Plaintiff secured a mortgage for her home at 481 Butler Drive, Thomasville, Davidson County, North Carolina 27360 from Bank of America.

13.     On information and belief, Bank of America sold, assigned, or otherwise transferred the mortgage to Defendant Nationstar in November 2011.

14.     Plaintiff made timely payments to the Nationstar account through August 2013 when she underwent either a loan modification or forbearance with Nationstar.

15.     After this modification or forbearance, Plaintiff made regular payments and attempted to stay current on the loan.

16.     On October, November, and December of 2018, Plaintiff made three trial payments

in pursuit of a modification. The loan was modified by January 2019 when Plaintiff made an on-time payment of $768.47 under the modified terms.

17.     Plaintiff made on-time payments from January 2019 to present.

18.     A copy of Plaintiff's payment history is attached hereto as Exhibit "A".

19.     Sometime in February 2020, Plaintiff requested and received a copy of her credit report assembled, evaluated, and disbursed by Equifax and noticed that her Nationstar mortgage account was reporting inaccurately.

20.     Plaintiff noticed that within the Equifax credit report, her Nationstar account was inaccurately reporting late for the following months:

- In 2013: August, September, and October

- In 2014: February

- In 2017: February, September, November, and December

- In 2018: February, April, June, July, August, September, October, November, and December.

- In 2019: January, February, March, April, May, June, and July.

21.     A copy of Plaintiff's Equifax credit report dated February 4, 2020 is attached hereto as Exhibit "B" and incorporated herein by reference.

22.     Sometime in February 2020, Plaintiff requested and received a copy of her credit report assembled, evaluated, and disbursed by Experian and noticed that her Nationstar mortgage account was reporting inaccurately.

23.     Plaintiff noticed that within the Experian credit report, her Nationstar account was inaccurately reporting late for the following months:

- In 2013: August, September, and October.

- In 2014: February.

- In 2017: February, September, November, and December.

- In 2018: February, April, June, July, August, September, October, November, and December.

- In 2019: January, February, March, April, May, June, and July.

24. A copy of Plaintiff's Experian credit report dated February 27, 2020 is attached hereto as Exhibit "C" and incorporated herein by reference.

25. Sometime in February 2020, Plaintiff requested and received a copy of her credit file assembled, evaluated, and disbursed by Trans Union and noticed that her Nationstar mortgage account was reporting inaccurately.

26. Plaintiff noticed that within the Trans Union credit report, her Nationstar account was inaccurately reporting late for the following months:

- In 2017: March, October, and December.

- In 2018: January, March, May, July, August, September, October, and December.

- In 2019: January, February, March, April, May, June, July, and August.

27. A copy of Plaintiff's Trans Union credit report dated February 5, 2020 is attached hereto as Exhibit "D" and incorporated herein by reference.

28. Sometime in February 2020, Plaintiff requested and received a copy of her credit file assembled, evaluated, and disbursed by Innovis and noticed that her Nationstar mortgage account was reporting inaccurately.

29. Plaintiff noticed that within the Innovis credit report, her Nationstar account was

inaccurately reporting late for the following months:

- In 2013: August, September, and October.

- In 2014: February.

- In 2017: February, September, November, and December.

- In 2018: February, April, June, July, August, September, October, November, and December.

- In 2019: January, February, March, April, May, June, and July.

30.    A copy of Plaintiff's Innovis credit report dated February 27, 2020 is attached hereto as Exhibit "E" and incorporated herein by reference.

31.    Very notably, Trans Union is almost one month out of step for the months that are supposedly late compared to Equifax, Experian, and Innovis. The cumulative result of this, depending on the credit report, is that Plaintiff is being reported late for more months than she may have been for a time span of over three years.

32.    On or about May 27, 2020, Plaintiff disputed the reporting of the Nationstar mortgage account with Equifax, Experian, Trans Union, and Innovis ("CRA Defendants") directly. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar mortgage account.

33.    Redacted copies of Plaintiff's unsigned Dispute Letters to Equifax, Experian, Trans Union, and Innovis are attached hereto as Exhibits "F", "G", "H", and "I", and incorporated herein by reference.

34.    Plaintiff's dispute and accompanying evidence including the Nationstar payment

activity described in detail why she should not have been reported late for the disputed months and alerting the CRA Defendants to the following:

    a.   There were many transactions on January 30, 2014 and that any report that Plaintiff made a late payment for months prior and up to February 2014 would be inaccurate and unverifiable.

    b.   Plaintiff made a full payment on February 6, 2017 and was not late for her February 2017 payment.

    c.   From January 2017 through June 2018 not all the credit reports could determine which month, if any, she was late and reporting her as such was patently unverifiable and it should then follow that any reported late months from July 2018 through December 2018 would be thrown into question also.

    d.   When 2019 began, she entered into the loan modification and paid as requested from January through July 2019.

35.    Despite this, Equifax, Experian, and Trans Union all failed to respond to Plaintiff's dispute.

36.    Therefore, on October 2, 2020 Plaintiff requested and received a copy of a Tri-Merge credit report that exhibited her updated credit reports for Equifax, Experian, and Trans Union.

37.    A redacted copy of Plaintiff's Tri-Merge credit report is attached hereto as Exhibit "J".

38.    In the Tri-Merge credit report, Equifax showed Plaintiff's Nationstar mortgage was removed--presumably deleted. No payment history or credit data was present.

39.    Equifax's response failed to ensure accuracy and was not the result of a reasonable

reinvestigation because Plaintiff disputed the accuracy and unverifiable nature of each payment on the Nationstar mortgage tradeline and in response, Equifax removed the entire tradeline without notice. Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish inaccurate information regarding Plaintiff's Nationstar mortgage account.

40.     Upon Plaintiff's request to Equifax for verification and addition regarding the Nationstar mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims, or evidence. Further, Equifax did not make any attempts to substantially or reasonably verify the Nationstar reporting lines.

41.     In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

42.     The Tri-Merge credit report showed on the Experian section that Plaintiff's Nationstar mortgage had been removed--presumably deleted. No payment history or credit data was present. *See* Exhibit "J".

43.     Experian's response failed to ensure accuracy and was not the result of a reasonable reinvestigation because Plaintiff disputed the accuracy and unverifiable nature of each payment on the Nationstar mortgage tradeline and in response, Experian removed the entire tradeline without notice. Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish inaccurate information regarding Plaintiff's Nationstar mortgage account.

44.     Upon Plaintiff's request to Experian for verification and addition regarding the

Nationstar mortgage account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims, or evidence. Further, Experian did not make any attempts to substantially or reasonably verify the Nationstar reporting lines.

45.     In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

46.     The Tri-Merge credit report showed on the Trans Union section that Plaintiff's Nationstar mortgage had been removed--presumably deleted. No payment history or credit data was present. *See* Id.

47.     Trans Union's response failed to ensure accuracy and was not the result of a reasonable reinvestigation because Plaintiff disputed the accuracy and unverifiable nature of each payment on the Nationstar mortgage tradeline and in response, Trans Union removed the entire tradeline without notice. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish inaccurate information regarding Plaintiff's Nationstar mortgage account.

48.     Upon Plaintiff's request to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims, or evidence. Further, Trans Union did not make any attempts to substantially or reasonably verify the Nationstar reporting lines.

49.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

50.     Innovis responded to Plaintiff's dispute on or about July 1, 2020.

51.     A copy of Innovis's response letter dated July 1, 2020 is attached hereto as Exhibit "K" and incorporated herein by reference.

52.     Innovis's response failed to ensure accuracy and was not the result of a reasonable reinvestigation because Plaintiff disputed the accuracy and unverifiable nature of each payment on the Nationstar mortgage tradeline and in response, Innovis removed the entire tradeline. Innovis chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish inaccurate information regarding Plaintiff's Nationstar mortgage account.

53.     Upon Plaintiff's request to Innovis for verification and addition regarding the Nationstar mortgage account, and in accordance with Innovis's standard procedures, Innovis did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar reporting lines.

54.     In the alternative to the allegation that Innovis failed to contact Nationstar, it is alleged that Innovis did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

55.     After the CRAs notified Nationstar of the disputed tradeline involving the Nationstar mortgage account, Nationstar failed to change or correct any of the information. Instead, Nationstar reaffirmed and continued to furnish to the CRAs incorrect, misleading, and damaging information about Plaintiff's mortgage account.


## V.  GROUNDS FOR RELIEF

## COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

56.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

57.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

58.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

59.     Equifax knew or should have known Plaintiff's account status and payment history were inaccurate, but Equifax continued to prepare a patently false consumer report concerning Plaintiff.

60.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

61.     After Equifax knew or should have known Plaintiff's account status and payment history were inaccurate, it failed to make the corrections. Further, Plaintiff did not request for the Nationstar mortgage tradeline be deleted.

62.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and

emotional pain, anguish, humiliation, and embarrassment of credit denials.

63.     Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

64.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

65.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

66.     Equifax violated 1681i by failing to update inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

67.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

68.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to

15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

69.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

70.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

71.     Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

72.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

73.     Experian knew or should have known of Plaintiff's account status and payment history, but Experian continued to prepare a patently false consumer report concerning Plaintiff.

74.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

75.     After Experian knew or should have known Plaintiff's account status and payment history were inaccurate, it failed to make the corrections. Further, Plaintiff did not request for the

Nationstar mortgage tradeline be deleted.

76.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

77.    Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

78.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

79.    Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

80.    Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, Inc., failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

81.    As a result of Experian's conduct, action, and inaction, Plaintiff suffered damages,

including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

82.    Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

83.    Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IV – INNOVIS'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

84.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

85.    Innovis violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

86.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

87.    Innovis knew or should have known of Plaintiff's account status and payment history were inaccurate  but continued to prepare a patently false consumer report concerning Plaintiff.

88.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Innovis readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

89.     After Innovis knew or should have known Plaintiff's account status and payment history were inaccurate, it failed to make the corrections. Further, Plaintiff did not request for the Nationstar mortgage tradeline be deleted.

90.     As a result of Innovis's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

91.     Innovis's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

92.     The Plaintiff is entitled to recover costs and attorney's fees from Innovis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.


### COUNT V – INNOVIS'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

93.     Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

94.     Innovis violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in Plaintiff's credit file after receiving actual notice of such inaccuracies,

failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, Inc., failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

95.     As a result of Innovis's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

96.     Innovis's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

97.     Plaintiff is entitled to recover costs and attorney's fees from Innovis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.


### COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

98.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

99.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

100.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a

consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

101.    Trans Union knew or should have known of Plaintiff's account status and payment history, but Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

102.    Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

103.    After Trans Union knew or should have known Plaintiff's account status and payment history were inaccurate, it failed to make the corrections. Further, Plaintiff did not request for the Nationstar mortgage tradeline be deleted.

104.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

105.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

106.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

## COUNT VII – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

107.    Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

108.    Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, Inc., failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

109.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

110.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

111.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT VIII – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

112.   Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify, delete, and/or block the information.

113.   Nationstar further violated 15 U.S.C. § 1681s-2(b) by summarily deleting the tradeline within Plaintiff's credit file with the CRA Defendants, failing to fully and properly investigate the Plaintiff's dispute of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

114.   As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

115.   Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

116.   Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals,

within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII.    DAMAGES

117.    Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

118.    Plaintiff respectfully requests that this Honorable Court award Plaintiff her litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

119.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

120.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

121.    Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

122.    Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

123.    Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive

damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

WHEREFORE PREMESIS CONSIDERED, Plaintiff, Cindy Owens prays that this Honorable Court:

A.    Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., Innovis Data Solutions, Inc., Trans Union, LLC, and Nationstar Mortgage, LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.    Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.    Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.    Order that the CRA Defendants, Equifax Information Services, LLC, Experian Information Solutions, Inc., Innovis Data Solutions, Inc., Trans Union, LLC, and Furnisher Defendant, Nationstar Mortgage, LLC, work in conjunction, cooperatively, and/or individually to reinvestigate

and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit

histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

      E.     Grant such other and further relief, in law or equity, to which Plaintiff might show she

is justly entitled.


                              Respectfully submitted,

**Dated:** December 10, 2020         */s/ Matthew P. Forsberg*
                              Matthew P. Forsberg
                              TX State Bar Number 24082581
                              Matt@FieldsLaw.com
                              FIELDS LAW FIRM
                              9999 Wayzata Blvd.
                              Minnetonka, Minnesota 55305
                              (612) 383-1868 (telephone)
                              (612) 370-4256 (fax)

                              **LAW OFFICE OF JONATHAN A. HEEPS**

                              */s/ Jonathan A. Heeps*       .
                              Jonathan A. Heeps
                              State Bar No. 24074387
                              LAW OFFICE OF JONATHAN A. HEEPS
                              Post Office Box 174372
                              Arlington, Texas 76003
                              Telephone (682) 738-6415
                              Fax (844) 738-6416
                              jaheeps@heepslaw.com


                              ***COUNSEL FOR PLAINTIFF***

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

December 10, 2020                     */s/ Matthew P. Forsberg*
Date                                  Matthew P. Forsberg